**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

————————————————————

ORLANDO CHRISTOPHER D.,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,                    No. 1:24-CV-01526
                                                    (PJE)

                              Defendant.

————————————————————

**APPEARANCES:**                              **OF COUNSEL:**

Olinsky Law Group                             HOWARD D. OLINSKY, ESQ.
250 South Clinton Street, Ste. 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration                 KRISTINA D. COHN, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

        Orlando Christopher D.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of the Social Security

Administration ("the Commissioner" or "defendant") denying his applications for

disability insurance and supplemental security income benefits.  *See* Dkt. No. 1

———————————————

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

("Compl.").[2]  Plaintiff moves for judgment on the pleadings and for the Commissioner's decision to "be remanded for further administrative proceedings, including a de novo hearing and a new decision."  Dkt. No. 10 at 12.[3]  The Commissioner moves to affirm. *See* Dkt. No. 11.  Plaintiff replies.  *See* Dkt. No. 14.  For the following reasons, plaintiff's motion is granted, the Commissioner's decision is vacated, and the matter is remanded to the Commissioner for further proceedings.

## I. **Background**

On February 16, 2023, plaintiff filed applications for Title II Social Security Disability benefits and Title XVI Supplemental Security Income benefits, alleging a disability onset date of July 28, 2022,[4] due to Charcot-Marie-Tooth disease.  *See* T at 87, 235, 342.  The Social Security Administration ("SSA") initially denied plaintiff's applications on April 25, 2023, and the denial was affirmed upon reconsideration.  *See id.* at 117, 127.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Judge Mulvey on May 31, 2024.  *See id.* at 33-85.  On August 19, 2024, ALJ Mulvey issued an unfavorable decision.  *See id.* at 14-26.  The Appeals Council denied plaintiff's request for review.  *See id.* at 1-6. Plaintiff timely commenced this action before the Court on December 16, 2024.  *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

---

[2]  The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, Local Rule 72.2(b), and General Order No. 18.  *See* Dkt. No. 8.

[3]  Citations to the parties' briefs refer to the pagination located at the header of each page, generated by the Court's electronic filing system, not the documents' original pagination.

[4] "T" followed by a number refers to the pages of the administrative transcript.
*See* Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the Commissioner's final decision, a district court may not determine de novo whether an individual (the "claimant") is disabled.  *See Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or support the decision with substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citations omitted). This is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotation marks omitted); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh conflicting evidence in the record) (citing *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate conclusion is arguably supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986).  However, if the

ALJ applied the correct legal standards, and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

B. **Determination of Disability**

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to disability benefits. 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). A disabling impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. *See id.* § 423(d)(2)(A). Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3); *see also Ventura v. Barnhart*, No. 04-cv-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background, age, and work experience.") (citing, *inter alia*, *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

To determine whether the claimant is entitled to disability benefits, a five-step evaluation, based on 20 C.F.R. §§ 404.1520 and 416.920, is used:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")].  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff can engage in gainful employment somewhere.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).

### III. **ALJ's Decision**

ALJ Mulvey noted that plaintiff met the insured status requirements through December 31, 2027, and had not engaged in substantial activity since July 28, 2022, the alleged onset date.  *See* T at 19.  At step two, the ALJ concluded that plaintiff had

5

the following severe impairments: Charcot-Marie-Tooth disease, coronary artery disease, degenerative changes in the lumbar spine, hypertension, migraine headaches, obesity, and neuropathy. *See id.* At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. *See id.* at 20. The ALJ then concluded that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except:

> Claimant can stand and walk for four hours in an eight-hour workday; claimant can sit for six hours in an eight-hour workday; claimant can frequently handle, finger, and feel with both upper extremities; claimant can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 edition; claimant should avoid work outdoors in bright sunshine and work with bright or flickering lights; claimant must avoid working at unprotecting (sic) heights, climbing ladders, ropes, or scaffolds, and working in close proximity to dangerous machinery and moving mechanical parts of equipment.

T at 20. At step four, the ALJ determined that plaintiff was unable to complete any past relevant work. *See id.* at 24. At step five, considering the vocational expert's ("VE") testimony and plaintiff's RFC, age, and education, the ALJ concluded that plaintiff could perform the following jobs existing in significant numbers in the national economy: (1) Document Preparer, DOT Code: 249.587-018, with 14,000 jobs in the national economy; (2) Addresser (DOT Code: 209.587-101), with 1,900 jobs in the national economy; and (3) Election Clerk (DOT Code 20.367-030), with 6,000 jobs in the national economy. *See id.* at 25. The ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from July 28, 2022, through the date of this decision[.]" *Id.*

## IV. **Discussion**

### A. **Arguments**

6

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence in reaching the plaintiff's RFC.  *See* Dkt. No. 10.   He contends that the ALJ's "evaluation of each medical opinion[5] is inadequately explained and, at times, contrary to fact."  *Id.* at 8.  First, plaintiff argues that the ALJ incorrectly characterized state agency medical consultants Dr. Gonzalez and Dr. Gandhi's opinions.  *See id.*  Second, plaintiff asserts that the ALJ did not fully or properly assess the supportability and consistency of consultative examiner Dr. Ganti's opinions.  *See id.* at 8-9.  Third, plaintiff argues that the ALJ's rejection of his primary care provider Dr. Niyazov's opinion lacks an explanation for the basis of his consistency finding; ignores medical findings that support his, and other providers', opinions; and, as to supportability, erroneously concludes that Dr. Niyazov failed to support his opinion beyond pointing to plaintiff's diagnosis.  *See id.* at 10-11.

The Commissioner argues that the ALJ properly and sufficiently articulated his findings as to the persuasiveness – the supportability and consistency factors – of all medical opinions in the record.  *See* Dkt. No. 11 at 8.  The Commissioner also specifically challenges plaintiff's assertion of error in assessing Drs. Gonzalez's and Vasquez's opinions. *See id.* at 9.

In reply, plaintiff accuses the Commissioner of ignoring legal error review, arguing that the Commissioner must also demonstrate that the ALJ applied the correct legal standard; thus, he argues, "it cannot be saved by the Commissioner's insistence that the decision could have passed the second step of review." Dkt. No. 14 at 1-2.

---

[5]  Although plaintiff states that "each medical opinion" is inadequately explained, dkt. no. 10 at 8, he discusses only the ALJ's assessment of the following opinions: state agency consultants Dr. Gonzales and Dr. Gandhi, consultative examiner Dr. Ganti, and plaintiff's primary care physician Dr. Niyazov.  *See* Dkt. No. 10.

Plaintiff further argues that the Commissioner failed to rebut or was "unresponsive" to his argument that the ALJ did not articulate how he evaluated the consistency and supportability factors.  *See id.* at 2-3.  Plaintiff reiterates his arguments that the ALJ's decision does not (1) "contain any evaluation of the supportability or consistency for the postural limitations opined by the state agency consultants," (2) contain "any explanation" for his determination that Dr. Ganti's opinion was "internally supported and 'somewhat' consistent with the record[,]" and (3) explain how he determined that Dr. Niyazov's opinion is consistent with any other evidence in the record.  Dkt. No. 14.

## B.  **Relevant Law**

An individual's RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means that the activity can be sustained for eight hours a day, five days a week or an equivalent schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In reaching an RFC determination, an ALJ must consider objective medical facts, diagnoses, medical opinions based on these facts, and the claimant's subjective symptoms, including pain and other limitations.  *See* 20 C.F.R. §§ 404.1545, 416.945; see *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v.*

8

*Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a claimant is capable of performing and may not make conclusory statements regarding a claimant's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016)); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

In evaluating medical opinions, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather, medical opinions and PAMFs are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2,

9

2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" analysis, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'").  For the "consistency" analysis, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. §§ 416.920c(c)(2), 416.1520c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted."  *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted).  "However, they must articulate how persuasive they found the medical opinions and PAMFs."  *Id*. (citing 20 C.F.R. § 416.920c(b)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'"  *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, at *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.").

## C.  Analysis

### 1. Drs. Gonzalez and Gandhi

Plaintiff argues that the ALJ's assessment of the opinions of Dr. Gonzalez and Dr. Gandhi incorrectly determined that (1) the doctors concluded that plaintiff was capable of performing a range of light work, when the consultants actually concluded

that plaintiff could perform sedentary work; and (2) declined to adopt additional postural limitations. *See* Dkt. No. 10 at 8 (citing T at 23, 91, 105, 109). Plaintiff contends that the ALJ improperly relied on this "mischaracterization" in "declin[ing] to include the consultants' assessed postural limitations in Plaintiff's RFC." *Id.* Plaintiff also contends that the ALJ failed to address the supportability and consistency factors for these doctors' opinions. *See id.* at 9.

The Commissioner contends that these doctors did not assess additional postural limitations, and the ALJ's statement is a "poor word choice" that does not amount to reversible error. Dkt. No. 11 at 9. The Commissioner further argues that, because the ALJ concluded that plaintiff could perform sedentary work, "it is of no consequence that Dr. Gonzalez and Dr. Gandhi opined that plaintiff could only stand and/or walk for four hours since sedentary work generally requires no more than about two hours or standing or walking in an eight-hour workday." *Id.* at 10. Lastly, he argues that the ALJ "showed Dr. Gonzales' and Dr. Gandhi's engagement with the record by noting that Dr. Gonzalez and Dr. Gandhi reviewed Plaintiff's file" and, citing to the administrative transcript, points to their findings in their reports. *See id.* at 10. The Commissioner also argues that the ALJ sufficiently addressed the consistency of the opinions by concluding that the opinions were "somewhat consistent" with the medical evidence of record. Id. at 11 (citing T at 23).

The Court agrees that Drs. Gonzalez and Gandhi did not include additional postural limitations; thus, the ALJ did not err in failing to adopt additional postural limitations. *See* T at 89-90, 97, 103. Although the ALJ also erroneously contended that Drs. Gonzales and Gandhi concluded that plaintiff could perform "a range of light

work[,]" he properly reported their actual findings – that they concluded that plaintiff could stand and walk for four hours in an eight-hour workday and sit for six hours.  *See id.* at 23.  The ALJ assessed plaintiff as sedentary.

Although the ALJ's somewhat sloppy recitation of Drs. Gonzalez and Gandhi's opinions, alone, might not be sufficient cause for remand, the Court agrees with the plaintiff that the ALJ failed to explain his consistency analysis for these doctors' opinions and may have based his assessment of both these providers' opinions and others on his incorrect reading of the record. The ALJ concluded that Drs. Gonzalez and Ghandi's opinions, although based "purely on a review" of plaintiff's file, are "*partially* persuasive because their findings are *somewhat* consistent with the medical evidence since the alleged onset date."  T at 23 (emphasis added).

The Second Circuit has held a near identical conclusion to amount to a "procedural error." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).  In *Loucks*, the ALJ did not address the one medical opinion's supportability or consistency "except to conclude that it was" ("I find this determination somewhat persuasive as it is generally consistent with the evidence of record") and did not address the consistency of the other medical opinion other than to say "it [was] inconsistent with the evidence of the record during the relevant period." *Id.*  The Second Circuit acknowledged that, "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed."  *Id.*  (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

Although the ALJ erred in concluding that the doctors found plaintiff could perform a range of light work and in referring to nonexistent postural limitations that he

rejected, the Court cannot conclude that the error is harmless for two reasons. First, although the ALJ reached the same finding as Dr. Gonzalez and Gandhi as to plaintiff's ability to perform sedentary work, he appears to have assigned their opinions less persuasiveness due to these errors. Had the ALJ properly reported Dr. Gonzalez and Ghandi's opinion, it is possible he would have found their opinions, or others in the record, entitled to a greater or lesser degree of persuasiveness. Second, the Court has no way of assessing his reasoning for believing their opinions to be "somewhat consistent" with the medical evidence of record. T at 23. The ALJ does not cite a single record with which he finds Drs. Gonzalez and Gandhi's opinions to be either consistent or consistent. *See Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, *8 (N.D.N.Y. Feb. 22, 2021) ("[T]he amended regulations require that the ALJ explain her findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (quoting *Jacqueline L. v. Comm'r of Soc. Sec.*, No. 6:19-CV-6786 (EAW), 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021)).

Although the Commissioner points to various "normal" findings, it is notable that the Commissioner is citing to the administrative transcript, not the ALJ's decision, as the ALJ decidedly did not cite or refer to these records in support of his statement that the opinions were "somewhat consistent" with the medical record. *See* Dkt. No. 11 at 11. This is a post-hoc rationalization that cannot save the ALJ's failings, as the ALJ's rationale cannot be gleaned from his decision, which makes no mention of these findings. *See, e.g.*, *John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL

3500187, at *2-3 (N.D.N.Y. August 18, 2022).  Thus, the ALJ's procedural error with respect to Drs. Gonzalez and Gandhi's opinions is not harmless.

## 2. **Dr. Niyazov**

The ALJ concluded that the opinion of plaintiff's primary care provider, Dr. Niyazov, was "generally unpersuasive."  T at 24.  He asserted that, despite a treatment relationship with plaintiff, Dr. Niyazov's "findings are inconsistent with medical evidence since the alleged onset date."  *Id*.  Further, the ALJ observed, where the form asked him to provide the medical findings that he used to support his opinions, "he pointed to claimant's diagnosis of Charcot-Marie-Tooth disease without any explanation of what particular findings or diagnostic tests might support his findings."  *Id*.  The ALJ concluded that his review "of the medical evidence indicates that the clinical findings and diagnostic testing in the record do not provide basis to conclude that claimant is limited to the limitations that Dr. Niyazov assessed."  *Id.*

Plaintiff asserts that the ALJ "fails to point to a single instance where 'the medical evidence' proved inconsistent with any aspect of the opinion whatsoever."  Dkt. No. 10 at 10.  Further, the plaintiff contends that the ALJ's statement that Dr. Niyazov failed to explain the clinical findings or diagnostic tests that "might support his findings" is "factually incorrect" as Dr. Niyazov "provided a narrative explanation in support of his opinion" in that he "explained that he has been treating Plaintiff for Charcot-Marie-Tooth disease every three months for over three years," that the disease "has been confirmed by nerve conduction studies," and that the disease "causes muscle cramps, weakness, and numbness" which impacts plaintiff's balance, manual dexterity, and abilities to stand, walk, use his hands, and "maintain position without breaks to stretch."  *Id.* (citing

15

T at 705-07).  The Commissioner asserts that the ALJ's decision "highlighted" that the doctor's opinion was "unsupported as he did not provide any explanation for his opinion by referencing particular clinical findings or diagnostic tests" other than citing plaintiff's diagnosis.  Dkt. No. 11 at 12.  The Commissioner compares Dr. Niyazov's opinion to "checklist forms" that courts have acknowledged to be "not very useful."  *Id.*

The Court agrees with plaintiff.  The ALJ does not point to the specific inconsistencies in the record between Dr. Niyazov's findings and other medical evidence and opinions.  "Beyond merely *considering* the supportability and consistency of medical source opinions, the ALJ must explain in his decision how he analyzed those factors." *Stephen W. C. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00546 (AMN/PJE), 2025 WL 2448196, at *2 (N.D.N.Y. Aug. 26, 2025) (quoting *Alvarado v. O'Malley*, No. 22-cv-9173, 2024 WL 1073293, at *9 (S.D.N.Y. Jan. 30, 2024), *report and recommendation adopted*, No. 22-cv-9173, 2024 WL 1344064 (S.D.N.Y. Mar. 29, 2024) (citations omitted)).  Even if he may have compared Dr. Niyazov's opinion to other medical sources and nonmedical sources, the Court is blind to it as he did not lay out this analysis as the regulations require.  *See also Kathleen A. v Comm'r of Soc. Sec. Admin.*, 3:20-CV-1034 (LEK), 2022 WL 673824, at *5 (N.D.N.Y. Mar. 7, 2022) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.") (quoting 20 C.F.R. § 404.1520c(c)(2); citing *Galo G.*, 2021 WL 5232722, at *4). The ALJ does not explain the supportability of or consistency between Dr. Niyazov's findings and any of the other medical sources. *See Ingrid T.G. v. Comm'r of Soc. Sec.*, 1:20-CV-

5651 (GRJ), 2022 WL 683034, at *9 (S.D.N.Y. Mar. 8, 2022) (rejecting the ALJ's decision where "the ALJ considered the medical opinions in isolation and did not account for the consistency of [the medical providers'] opinions with each other."). This alone is grounds for remand.

To the extent the Commissioner argues that the ALJ rejected Dr. Niyazov's findings, in part, as "unsupported by his own assessment," the ALJ did not explicitly reach such a conclusion. Dkt. No. 11 at 12 (citing T at 24). Instead, he generally concluded that "the clinical findings and diagnostic testing in the record do not provide a basis to conclude that claimant is limited to the limitation that Dr. Niyazov assessed." T at 24. However, even if the ALJ had so found, as above noted, without explaining how Dr. Niyazov's findings are inconsistent with the medical record, he has failed to meet the requirements of the regulations. The ALJ did not point to the evidence with which he believes Dr. Niyazov's opinion to be inconsistent, and the ALJ's intent cannot be "gleaned" from the decision as a whole. *Wanda N. v. Comm'r of Soc. Sec.*, No. 6:21-CV-00358 (TJM), 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022) (quoting *John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2) (N.D.N.Y. Aug. 18, 2022)). Without direction, the Court is unable to know which tests and findings he believes to be inconsistent with Dr. Niyazov's findings. "[C]ourts in this circuit have indicated that ALJs [must] not only identify supporting evidence, they also must 'build an accurate and logical bridge from that evidence to [the] conclusion.'" *Jennifer Mabel C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-01536 (BKS/CFH), 2024 WL 5058137, at *6 (N.D.N.Y. Oct. 24, 2024), *report and recommendation adopted sub nom. Jennifer M.C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-01536 (BKS/CFH), 2024 WL 5058283 (N.D.N.Y.

Dec. 10, 2024) (quoting *Courtney F. v. Berryhill*, No. 5:18-CV-0047 (LEK) 2019 WL

4415620, *7 (N.D.N.Y. Sept. 16, 2019)).  "In sum, while ALJs are not required to

'reconcile every conflicting shred of medical testimony,' *Miles v. Harris*, 645 F.2d 122,

124 (2d Cir. 1981), they must discuss the evidence and factors 'crucial' to the disability

determination with 'sufficient specificity to enable [this Court] to decide whether the

determination is supported by substantial evidence.'" *Ingrid T.G. v. Comm'r of Soc.

Sec.*, No. 1:20-CV-5651-GRJ, 2022 WL 683034, at *8 (S.D.N.Y. Mar. 8, 2022) (quoting

*Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698

F.2d 137, 142 (2d Cir. 1983)).

        Moreover, the ALJ improperly concluded that Dr. Niyazov did not support his

opined limitations with any explanation beyond pointing to her diagnosis. *See* T at 24.

Although Dr. Niyazov cited plaintiff's diagnosis of Charcot-Marie-Tooth disease in

response to the question in the report that asked for the medical findings that supported

his assessment, which the ALJ used as a basis to reject his opinion, he also explicitly

explained the findings that support his assessment.  *See id.*  He explained, in direct

response to that question, that the disease causes muscle cramps that prevent him

from lifting and carrying, that it impairs his standing and walking ability, that it requires

him to stand up and stretch due to numbness, that his postural activities are impacted

because his disease impacts his balance, and that his manipulative activities are

impacted because the disease affects his manual dexterity.  *See* T at 705-08 (Dkt. No.

7-7).

        Although the ALJ correctly notes that check-the-box forms without explanation

have been held to be entitled to little weight, that rationale does not cleanly apply here,

where the form explains the basis for the opined restrictions. *Compare Michael G. v. Comm'r of Soc. Sec.*, No. 6:24-CV-06069 EAW, 2025 WL 2750478, at *7 (W.D.N.Y. Sept. 29, 2025) ("In addition, to the extent that LMHC Bissell's opinion was offered on fill-in-the-blank or check-box forms, with little to no explanation of why significant restrictions were assessed, it was not error for the ALJ to discount its significance."); *Jose F. v. O'Malley*, No. 22-CV-325F, 2024 WL 4210900, at *6 (W.D.N.Y. Sept. 17, 2024) (rejecting the opinion of the plaintiff's mental health counselor where the check-box form's conclusions were internally consistent and the conclusion that the plaintiff is unable to work was unsupported by therapy notes or other medical evidence of record); *with Yucekus v. Comm'r of Soc. Sec.*, No. 21-CV-1794(EK), 2024 WL 1348742, at *3 (E.D.N.Y. Mar. 29, 2024) ("Although standardized check -box forms are less informative, and entitled to less weight, than full narrative medical reports, *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), this questionnaire included substantive narrative responses as well, and was supported by Dr. Bernard's earlier written examination reports.").

The ALJ did not cite or discuss any of Dr. Niyazov's medical records, despite his regular, three-year treatment history with plaintiff, or highlight where in these records there are inconsistencies with Dr. Niyazov's medical source statements. Indeed, diagnostic testing revealed atrophy of the hands and feet, distal hyporeflexia, absence of vibratory sensation in the toes, and sensory and motor deficits in the arms and legs. T at 475, 664-66.

Finally, although the Commissioner's motion papers identify individual treatment records that he contends are inconsistent with the clinical findings of record, "'the Court may not affirm the ALJ's decision solely on those post-hoc rationalizations.'" *Kaliegh O. o/b/o S.S.T. v. Comm'r of Soc. Sec.*, No. 5:24-CV-0662 (MAD/TWD), 2025 WL 2933177, at *5 (N.D.N.Y. Aug. 11, 2025), *report and recommendation adopted*, No. 5:24-CV-00662 (MAD/TWD), 2025 WL 2528577 (N.D.N.Y. Sept. 3, 2025) (citing *Dana Marie M. v. Comm'r of Soc. Sec.*, No. 6:21-CV-458 (GLS/CFH), 2022 WL 2314560, at *7 (N.D.N.Y. June 28, 2022) and *Gina B. v. Comm'r of Soc. Sec.*, No. 3:23-cv-00769, 2024 WL 4262640, at *7 (D. Conn. Sept. 23, 2024) ("The Commissioner cites to many pages in the medical record, pointing to them as the support for the ALJ's determination. However, that was the ALJ's task, and counsel for the Commissioner should not be tasked with filling in gaps later in the process.") (additional citations omitted)). Accordingly, for these reasons, remand is warranted. *See Wanda N.*, 2022 WL 4376484, at *11 (citing *Rivera*, 2020 WL 8167136, at *14 ("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *report-recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021)).

### 3. **Dr. Ganti**

Dr. Ganti performed a consultative neurologic examination of plaintiff on April 3, 2023. *See* T at 564-66. The ALJ observed that Dr. Ganti concluded that plaintiff was mildly to moderately limited in his abilities to lift, carry, push, and pull; mildly limited in his abilities to engage in prolonged standing, walking, sitting, climbing, balancing, stooping, crouching, kneeling, and crawling. *See id.* at 23. He reviewed Dr. Ganti's

findings of normal tandem walk heel-to-toe; ability to walk on heels and toes without difficulty; strength of 5/5 in upper and lower extremities; no muscle atrophy, tremors, or trigger points; normal sensation to pain, proprioception, and vibration; intact hand and finger dexterity; and grip strength of 5/5 bilaterally. *See id.* at 22-23. The ALJ concluded that internal medicine consultative examiner Dr. Ganti's opinion was "partially persuasive because his clinical observations support his findings and because his findings are somewhat consistent with the medical evidence discussed above." *Id.* at 23.

Plaintiff avers that the ALJ's assessment fails to explain "how he concluded the opinion was internally supported and 'somewhat consistent' with the rest of the record. The ALJ merely stated his conclusion" which is "legally insufficient" under 20 C.F.R. §§ 404.1520c, 146.920c. Dkt. No. 10 at 9. The Commissioner states that the ALJ discussed supportability by concluding that Dr. Ganti's opinion was supported by his own findings as a result of the examination. *See* Dkt. No. 11 (citing T at 2223, 565-66). The Commissioner further argues that the ALJ discussed that Dr. Ganti's opinion "was consistent with the medical evidence of record, which he discussed in his opinion. *See id.* (citing T at 23). The Commissioner contends that the ALJ is not required to "repeat his prior examination of the record as part of the persuasiveness analysis." *Id.* at 12 (quoting *Porteus v. O'Malley*, No. 23-CV-969, 2024 WL 2180202, at *2 (2d Cir. May 15, 2024)).

As to Dr. Ganti, the ALJ's decision did not explain with which opinions and medical records Dr. Ganti's opinion was consistent or inconsistent. Indeed, the ALJ's statement "did not *explain* anything – instead, he made a conclusory statement that [an]

opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations." *Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 9 (W.D.N.Y. 2022); *Aaron W. v. Comm'r See Gary F. v. Comm'r of Soc. Sec.*, No. 6:24-CV-01440 (FJS/ML), 2026 WL 417539, at *10 (N.D.N.Y. Jan. 20, 2026), *report and recommendation adopted sub nom. Aaron Treelane W. v. Comm'r of Soc. Sec.*, No. 6:24-CV-1440 (FJS/ML), 2026 WL 416054 (N.D.N.Y. Feb. 13, 2026) (citing *Gary F. v. Comm'r of Soc. Sec.*, 6:20-CV-6735 (LJV), 2022 WL 16540354, at *3 (W.D.N.Y. October 28, 2022)).   A supportability and consistency analysis such as this is insufficient and "'precludes the Court from undertaking meaningful review of the ALJ's decision.'"  *Annjeanette B. v. Kijakazi*, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (quoting *Jaleesa H.*, 580 F. Supp. 3d at 9). Although the Commissioner refers to the ALJ's discussion of medical records elsewhere in the decision – referring to "normal neurological findings, full range of motion in his joints, intact gait, full strength in the extremities, and generally unremarkable cardiovascular findings, dkt. no. 11 at 11-2 (citing T at 22-23, 481, 499, 545, 635, 650) – these limited references to the treatment record, discussed as part of his analyses of other medical providers' records, "do[] not elucidate how those treatment notes fail to support an opinion that Plaintiff would be off-task more than twenty percent of an eight-hour workday or absent from work about four days per month."  *Alexa J. M. v. Kijakazi*, No. 5:22-CV-243 (BKS/ML), 2023 WL 4467124, at *4 (N.D.N.Y. July 11, 2023) (limited reference to treatment record "does not elucidate how those treatment notes fail to support an opinion that Plaintiff would be off-task more than twenty percent of an eight-

hour workday or absent from work about four days per month."). In sum, the ALJ's assessment of Dr. Ganti's opinion "clearly leaves pertinent questions unanswered" as to his reasoning for the persuasiveness of Dr. Ganti's opinion. *Briselida R. v. Comm'r of Soc. Sec.*, No. 5:22-CV-01290 (TJM/ML), 2023 WL 9600841, at *9 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley,* No. 5:22-CV-1290 (FJS/ML), 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024) (citation omitted).

## V. **Conclusion**

Accordingly, for the reasons set forth herein, the ALJ's decision is vacated, and this matter is remanded to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order. *See Loucks,* 2022 WL 2189293, at *2 ("When the ALJ has committed procedural error, we generally remand with instructions to reconsider the disability claim consistent with the procedural mandates of the governing regulations."); *Estrella v. Berryhill,* 925 F.3d 90, 96 (2d Cir. 2019) (remanding when the ALJ procedurally erred and a "searching review of the record" provides no assurance that the "substance of the . . . . rule was not traversed.") (quoting *Halloran,* 362 F.3d at 32). On remand, the ALJ is to properly evaluate the persuasiveness of each of the opinions and specifically and fully explain the findings. *See Briselida R.*, 2023 WL 9600841, at *11.

Wherefore, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, dkt. no. 10, is **GRANTED**, and the matter is remanded to the Commissioner for proceedings consistent with this Memorandum-Decision and Order, and the Commissioner's Cross-Motion for Judgment on the Pleadings, dkt. no. 11, is **DENIED**; and it is

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

Dated: February 23, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge